**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| Pine Island Property Holdings, LLC and Pine Island GC, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>Beaufort County, South Carolina,<br><br>Defendant, and<br><br>Gullah/Geechee Sea Island Coalition,<br><br>Intervenor/Defendant. | Civil Action No.: 9:23-cv-03962-RMG<br><br>**AMENDED COMPLAINT**[1]<br><br>*(Declaratory Judgment; Violation of 42 U.S.C. § 1983; Violation of Equal Protection; Violation of Commerce Clause; Estoppel; Regulatory Taking)* |

COME NOW Plaintiffs Pine Island Property Holdings, LLC and Pine Island GC, LLC ("Plaintiffs"), by and through their undersigned counsel, and submit this Amened Complaint against Defendant Beaufort County, South Carolina as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Pine Island Property Holdings, LLC ("PIPH") is a South Carolina limited liability company. PIPH owns real property located in Beaufort County, South Carolina.

2. Plaintiff Pine Island GC, LLC ("PIGC") is a South Carolina limited liability company doing business in Beaufort County. PIGC is affiliated with PIPH and assists with the management, planning and development of PIPH's property.

[1] Plaintiffs file this Amended Complaint as of right under Fed. R Civ. P. 15(a)(1)(B) in response to Defendant's Motion to Dismiss (ECF No. 33) under Fed. R. Civ. P. 12(b)(6).

3. Defendant Beaufort County, South Carolina (the "County") is a governmental entity and municipal corporation existing under the laws of the State of South Carolina and operating in Beaufort County, South Carolina.

4. This action relates to approximately five hundred acres of land owned by PIPH located on a portion St. Helena Island, Beaufort County, South Carolina, knowns as "Pine Island" and is properly divided into distinct and separate properties identified by TMS Nos.: R300-007-000-0002-0000, R300-012-000-0001-0000, R300-012-000-0254-0000, R300-012-000-0255-0000, R300-012-000-0256-0000, and R300-011-000-0275 (the "Property"). PIGC is an operating company that is assisting PIPH with the management, planning and development of the Property.

5. Plaintiffs have alleged claims arising under the Constitution, laws, or treaties of the United States over which this Court has original jurisdiction under 28 U.S.C. §1331, and therefore, this Court has jurisdiction over the parties and the subject property and is empowered to grant the relief being sought by Plaintiffs.

6. Venue is proper in the United States District Court for the District of South Carolina, Beaufort Division under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' causes of action occurred in Beaufort County, South Carolina.

7. The purpose of this action is to confirm that the County's "Cultural Protection Overlay" Ordinance and Zone are not valid as applied to the subject Property and that, as a result, Plaintiffs may proceed with their intended development of their Property. This action does not address the applicability of the ordinance or zone as to any other properties.

## FACTUAL ALLEGATIONS

8. The Property, which is also known as "Pine Island Plantation," is located off Dulamo Road and abutting Morgan River, Village Creek, and Edding Creek. The Property has

been continuously used as a private recreation destination, resort and investment property since the 1800s. The Property is privately owned and has been gated for over fifty years. *See* Exhibit A, Timeline of Private Ownership; Exhibit B, Declaration of Elvio Tropeano.

9. The underlying zoning for the Property is T2 Rural ("T2R"), which allows for a variety of uses, including golf courses of any size and residential development with a density of up to one (1) dwelling unit per three (3) acres. *See* CDC § 3.1.60, Consolidated Use Table. This relative density for residential development is significantly lower than is available in other districts of the County. *See* Exhibit C, Consolidated Use Table.

10. The Pine Island property is located within the District 3 boundaries of unincorporated Beaufort County. District 3 encompasses portions of downtown Beaufort, Lady's Island, Paris Island, Fripp Island, Hunting Island and the majority of St. Helena Island. There are seven (7) golf courses located within District 3.

11. The County Council representative for District 3 is Councilman York Glover. Mr. Glover has served on County Council since 2017.

12. PIGC initially contracted to purchase the Property in October of 2021 and pursued a development plan, which was to construct an 18-hole golf course, associated lodging, and a limited number of docks. This development plan involves significantly less infrastructure, construction activity, roads, impervious surfaces, residences, residents, and associated impacts than would alternative plans omitting a golf course.

13. During the due diligence process, Plaintiffs learned that the Property is located within the Cultural Protection Overlay ("CPO") District, which is intended to protect Gullah/Geechee heritage and prevent rural gentrification according to the County. Based on the

plain wording of the CPO Ordinance in existence at the time, any golf courses within the CPO District would be limited to fewer than nine (9) holes on a given parcel.

14. In terms of the by right zoning, Plaintiffs are allowed to construct up to one hundred and sixty-six (166) units of single-family residential development on the Property. Also, under applicable DHEC/OCRM regulations, approximately one hundred (100) private docks can be constructed on the Property. Nevertheless, Plaintiffs' original development plan involved less than half as many residences and only a fraction of the number of docks along with a low impact 18-hole golf course as Plaintiffs' objective is to pursue a conservation-minded development with a significantly lighter footprint than would be allowed by right.

***<u>CPO District and Comprehensive Plan</u>***

15. On April 26, 1999, the County adopted Ordinance No. 1999/12, which codified the County's Zoning & Development Standards. As part of this Ordinance, the County adopted the CPO District.

16. The CPO District encompasses all of St. Helena Island, which is approximately 64 square miles of mostly private property. In its current state, the CPO District is nearly twice the size of both Hilton Head Island and the Town of Bluffton, South Carolina. When it was created, the boundaries of the CPO District were maneuvered to exclude properties on St. Helena Island where resorts, golf courses, gated communities, and/or recreational uses were already present.

17. At the time that the Ordinance No. 1999/12 was enacted, the County Attorney expressed concerns that the regulation was overly broad and legally indefensible because the CPO District encompassed almost the entirety of St. Helena Island, rather than being narrowly tailored to apply only to "the true cultural portions of St. Helena Island." *See* <u>Exhibit D</u>, March 22, 1999 Beaufort Council Meeting Minutes highlighted. Additionally, then Councilmember Tinnan noted

the CPO Ordinance overreaching and economically detrimental nature of the CPO District, stating, "Council cannot and must not blank out portions of the County that have economic development potential" and that "[a] golf course will not harm the community but it will create 60 jobs close a home and provide a recreational outlet for the citizens who would like to take up the game." *Id.*

18. The CPO District is also addressed within the County's 2040 Comprehensive Plan that was adopted on November 8, 2021 (the "Comprehensive Plan"). The Comprehensive Plan recognizes the need for a balanced approach to development and called upon County Council to reevaluate the CPO District "by assessing whether additional land use restrictions are necessary to meet the intent of the district."

19. State law requires that zoning regulations be uniform in terms of their restriction of use within a given district. Specifically, Section 6-29-720 of the South Carolina Local Government Comprehensive Planning Enabling Act of 1994 ("Enabling Act") states that "all . . . [zoning] regulations must be uniform for each class or kind of building, structure, or use throughout each district." *See* S.C. Code § 6-29-720(B). The CPO Ordinance is inconsistent with this requirement.

20. The T2R zoning designation is one of only two zoning designations within the County that permits golf course development. For properties zoned T2R, "Recreation Facility: Golf Course" is "Permitted By Right." *See* Community Development Code ("CDC") § 3.1.60. In its current state, the CPO Ordinance violates state law because it eliminates uniformity for each class or kind of building, structure, or use throughout each district.

21. Also, according to Section 3.4.10 of the CDC as well as S.C. Code § 6-29-720, as an "overlay zone," the CPO District is supposed to be "a zone which imposes a set of requirements

or relaxes a set of requirements imposed by the underlying zoning district when there is a special public interest in a particular geographic area that does not coincide with the underlying zone boundaries," as opposed to an area where property owners are entirely excluded from engaging in lawful uses that are allowed by their base zoning. *See* S.C. Code § 6-29-720.

22. An overlay zone cannot legally be used to prohibit the legitimate exercise of basic property rights, such as the right to secure your property, subdivide your property, build a fence, construct a dock, or engage in recreational activities.

23. In imposing these various prohibitions, the wording used in the CPO Ordinance is improper both as applied to the Property and on its face. Here, the prohibitions of the CPO are not being utilized to implement the goals of the base zoning but to deny a use that is explicitly permitted within the base zoning.

24. The CPO Ordinance is vague in its application, overbroad, and otherwise inconsistent with applicable law. For example, the CPO Ordinance prohibits "design features" that "restrict access to water" and "other culturally significant locations," without defining or otherwise limiting these terms. *See* CDC, § 3.4.50(C). By its plain wording, this would mean that a property owner could not build a fence around a swimming pool.

25. Prior to a recent text amendment that was adopted by County Council on May 8, 2023, Section 3.4.50.D of the CDC, entitled "Use Limitations," provided that the following specific uses are deemed to be incompatible with the CPO zone; and therefore, are prohibited:

a. **Restricted Access (Gated Communities).** An intentionally designed, secured bounded area with designated and landscaped perimeters, usually walled or fenced, that are designed to prevent access by non-residents.

b. **Resort.** This use includes lodging that serves as a destination point for visitors and designed with some combination of recreation uses or natural areas. Typical types of activities and facilities include marinas, beaches, pools, tennis, golf, equestrian, restaurants, shops, and the like. This restriction does not apply to ecotourism or its associated lodging.

c. **Golf Course.** This use includes regulation and par three golf courses having nine or more holes.

26. Although the stated purpose of establishing the CPO District is to protect the natural and cultural resources of. St. Helena Island, the prohibitions and restrictions imposed by the CPO Ordinance lack a sufficient relationship and nexus to their stated purpose.

27. The CPO Ordinance is also arbitrary. It bans certain uses entirely while allowing other uses that would have similar or greater impacts upon natural or cultural resources, such as Amusement and Theme Parks, Go-Cart Tracks, Golf Driving Ranges, Mini Golf Courses, Water Parks, Community and Regional Waste and Recycling Centers, Regional Waste Transfer and Recycling Centers, Regional Waste Disposal and Resource Recovery, and Mining and Resource Extraction.

***Plaintiffs' Discussions with the County and the Initial Proposed Amendments to the CPO Ordinance***

28. Plaintiffs diligently pursued a golf course development plan for the Property ("Pine Island Development") in reliance upon the permissible uses within the T2R zoning classification, the then-existing Use Limitations provided in Section 3.4.50 of the CDC, and the Comprehensive Plan.

29. Plaintiffs assembled a team of engineers, surveyors, landscape architects, land planners, archaeologists, arborists and attorneys to pursue the development plan and to specifically work with the community leaders and citizens of St. Helena Island to determine which aspects of development are most important to the community.

30. Beginning on February 17, 2022, representatives of the Plaintiffs met privately with Councilmember York Glover on a consistent basis to share proposed development plans, receive input/feedback, and allow for Councilmember Glover to facilitate meetings with leaders of the St.

Helena Community. During the year 2022, Plaintiffs' representatives met with Councilmember Glover privately over ten (10) times.

31. During an April 18, 2022 private meeting, Councilmember Glover stated he is "Going to be a huge supporter of ours. He would like the County Administrator to figure out how to do this, but that the rest of council will be with me." Councilmember Glover continued, "This is my district and my constituents, and I know this is the right thing and I recognize the value of this to the community." A subsequent site-visit to the Pine Island Property with the Ministerial Leaders of St. Helena Island was scheduled for five (5) days later.

32. On April 23, 2022, Councilmember Glover hosted a "Meeting with Ministers of St. Helena Island" regarding Plaintiffs' proposed development plans with over a dozen attendees. Lunch was provided by the Plaintiff, and a presentation was provided by the Councilmember Glover on Beaufort County Letterhead summarizing the proposed development. *See* Exhibit E, Agenda for Meeting with Ministers of St. Helena Island, April 23, 2022.

33. At the request of Councilmember Glover, Plaintiffs' representatives met with Beaufort County Administrator, Eric Greenway, to discuss plans for the Pine Island Development and address the vagueness of the language of the CPO Ordinance as it relates to golf courses being permitted in the CPO District. Mr. Greenway expressed concerns over Plaintiffs' proposed layout of the residential component but acknowledged that a golf course was permitted.

34. Plaintiffs prepared a conceptual land plan, which was presented to Mr. Greenway and the entire Beaufort County Planning and Zoning Staff during a meeting on June 27, 2022. Presentations regarding the County's position on the Pine Island Development and its adherence to the Beaufort County zoning requirements and CDC provisions were delivered by Beaufort County Deputy Director of Planning and Zoning, Mark Davis. In addition, Eric Greenway stated

that he would need to be involved in the design and layout of the Pine Island Development and that a meeting with Plaintiffs' land planner would be required. The County representatives in attendance at this meeting acknowledged that a golf course was a permissible use of the Property. *See* Exhibit F, Agenda from June 27, 2022 Meeting.

35. On September 15, 2022, Plaintiffs' land planners had a meeting with Eric Greenway, Mark Davis, and Beaufort County Planning Director, Robert Merchant, along with other members of Beaufort County Administration and Beaufort County Planning and Zoning Department at the County Administration building. During this meeting, the County officials present confirmed that a golf course of less than nine (9) holes was a permissible use of the Property.

36. During these meetings, representatives of the County were supportive of Plaintiffs' presented plan, noting that the reduced impact would be a positive attribute. Additionally, although the wording of the CPO Ordinance indicated that golf courses of nine (9) holes or more were prohibited, Mr. Greenway, Mr. Davis, and Mr. Merchant confirmed that, if the Property included multiple parcels, multiple golf courses of less than nine (9) holes each and approximately sixty (60) units of residential development would be allowable.

37. Plaintiffs' representatives continued to meet with members of Beaufort County Council, the County Administrator, and the County's attorneys over the course of several months to discuss the next steps in the planning and approval process.

38. On September 8, 2022, Plaintiffs' representatives had a meeting in the Beaufort County Executive Conference Room with: (i) the Chairman of Beaufort County Council, Joe Passiment; (ii) Councilmember York Glover: (iii) County Attorney Tom Keaveny; (iv) Deputy County Attorney Brittany Ward; (v) County Planning and Zoning Director Rob Merchant; and (vi)

Deputy County Planning Director Mark Davis, among others. At this meeting it was determined that a zoning map Amendment would be the next appropriate step in furtherance of Plaintiffs' proposed development.

39. Based on the County directive from the September 8, 2022 meeting and Mr. Greenway, Plaintiffs submitted a zoning map amendment request to the County Planning and Zoning Department on November 29, 2022. The then-owners of the Property authorized Plaintiffs to act as the Applicant in pursuit of the zoning map amendment.

40. The aforementioned Beaufort County's officials' recommendations and representations to Plaintiffs in these aforementioned meetings were done in their official capacities and were binding upon the County. Section 9.4.10 of the CDC specifically states that the County Administrator shall be responsible for enforcing the provisions of the CDC. *See* CDC § 9.4.10.

41. Plaintiffs' zoning map amendment request set forth the manner in which the proposed Pine Island Development would meet and exceed the goals of both the County and the local community, including the proposed plans for preservation and protection of cultural heritage and historical resources, designating community access points, sourcing of local goods and services, and conserving large portions of the Property through a Conservation Easement and deed restrictions. *See* Exhibit G, Zoning Map Amendment Application.

42. When advising Plaintiffs to pursue a zoning map amendment, the County informed Plaintiffs that the County would be proposing a text amendment to the CPO Ordinance. After Plaintiffs' zoning map amendment was submitted, the County contacted Plaintiffs to request that the zoning map amendment be held "active but pending" while the County Planning Staff pursued a text amendment to the CPO Ordinance to provide an avenue for modulation, including developing an 18-hole golf course on the Property. *See* Exhibit H, November 30, 2022 letter.

43. During the Beaufort County Planning Commission meeting on January 5, 2023, Mr. Greenway and Deputy County Attorney, Brittany Ward, suggested amendments to Section 3.4.50.D, Use Limitations as set forth in the CPO Zone Standards to "allow greater land use flexibility by permitting previously prohibited uses in the CPO Zone, but only if certain conditions are met which further protect and otherwise enhance the purpose of the CPO Zone." *See* Exhibit I, Memorandum dated January 5, 2023.

44. During the presentation to the Planning Commission, Mr. Greenway and Ms. Ward detailed the existing problems relating to the enforceability of the CPO Ordinance. They explained that the language of the CPO Ordinance is arbitrary and lacks a logical nexus between the purpose and the restrictions. The County staff further detailed that the CPO Ordinance was arbitrary and unclear where it permitted eight (8) or less holes of golf but prohibited nine (9) or more holes. *See* https://www.youtube.com/live/nPqx2_jYMns?feature=shared&t=2361.

45. During this January 5, 2023 meeting, a member of the Planning Commission questioned whether the then-existing language of the CPO Ordinance was correct. Mr. Greenway and Ms. Ward confirmed that the language, which had been in place since 1999, allows the use of golf courses of less than nine (9) holes. They further confirmed that a developer could subdivide parcels to effectively achieve an 18-hole golf course so long as each parcel was developed independently and in accordance with the CDC. Nevertheless, the Planning Commission voted to deny the proposed text amendment presented by Mr. Greenway and Ms. Ward. *See* https://www.youtube.com/live/nPqx2_jYMns?feature=shared&t=2551

46. In the subsequent weeks, there were dozens of local and regional Newspaper articles and press releases that included statements by Beaufort County Officials (Eric Greenway,

Chris Ophardt, Brittany Ward, among others) confirming that golf was not a prohibited use under the CPO Ordinance.

47. After the Planning Commission denied the text amendment and just prior to closing on the Property in February of 2023, Plaintiffs met with Eric Greenway, Beaufort County Attorney Tom Keaveny, Deputy County Administrator Whitney Richland and Special Assistant to the County Administrator Hank Amundson. At this meeting, these representatives of Beaufort County advised Plaintiffs to subdivide the Property and to pursue the development of each parcel with golf courses of less than nine holes on the subdivided parcels. Immediately following this meeting, Mr. Greenway further advised Plaintiffs' legal counsel to meet with the Beaufort County Zoning and Development Administrator, Hillary Austin, to secure approval of the subdivision plans and schedule a staff review team meeting for the purpose of reviewing the three (3) concept plans for the subdivided Property. Again, Plaintiffs believed these Beaufort County's officials' recommendations and representations were made in their official capacities and binding upon Beaufort County.

48. Relying upon the existing rights to develop the Property in accordance with the T2R zoning classification, the then-existing Use Limitations provided in Section 3.4.50 of the CDC, zoning regulations, the Comprehensive Plan, and the County's confirming that the proposed development plan involving multiple golf courses of less than nine (9) holes each was permissible, PIPH closed the purchase of the Property in February 2023.

49. Based on the County's representations and direction, Plaintiffs subdivided the Property in reliance on the County's representations. The subdivision plat was recorded with the Beaufort County Register of Deeds at Book 160, Pages 178 – 181 on February 28, 2023.

50. On March 7, 2023, Plaintiffs submitted three Conceptual Land Development Plan Applications for three (3) six-hole golf courses on the Property (the "Applications"). At the time Plaintiffs submitted the Applications, Plaintiffs had acquired specific vested rights and constitutionally protected property interests to develop the Property as a golf course under the then-existing zoning classification and CPO Ordinance.

51. On March 8, 2023, Plaintiffs had a required Staff Review Team ("SRT") Pre-Application Conference meeting for the proposed Conceptual Land Development Plan applications. SRT meetings are typically held in the Executive Conference room at the Beaufort County Administration Building, however the SRT Meeting for Pine Island was held in the County Council Meeting Room, where multiple members of the public, special interest groups, and reporters were allowed into a "non-public" meeting. Plaintiffs were required to answer questions from the Council podium, rather than engage in the standard discussion around the Executive Room table.

52. At the March 8, 2023, SRT meeting, the Planning and Zoning Administrator, Hilary Austin, made suggestions to prevent a recombination of the three separate parcels to ensure a nine-hole or greater golf course could not be created. After publicly conferring with Beaufort County Legal Counsel, Brittany Ward, and the Head of Planning and Zoning, Chuck Atkinson, the Planning and Zoning Administrator confirmed that golf courses of less than nine holes were permitted in the CPO.

53. Per CDC Section 7.4.20, "The purpose of a pre-application conference is to provide an opportunity for the applicant to determine the submittal requirements and the procedures and standards applicable to an anticipated development application. A pre-application conference is also intended to provide an opportunity for County staff to become familiar with, and offer the

applicant preliminary comments about, the scope, features, and impacts of the proposed development, as it relates to Code standards."

54. It is standard procedure and required by CDC 7.2.40(F) to receive an "Action Item" report from the Planning and Zoning department after SRT meetings summarizing staff comments and items the applicant needs to address before the next meeting with Staff. *See* CDC § 7.4.20(F) states "Within a reasonable period of time after completion of the pre-application conference, the Director shall provide the potential applicant a brief summary of the issues discussed at the pre-application conference." Despite multiple requests from the Plaintiff, the Beaufort County Staff Review Team never issued the legally required report.

55. The Applications were complete in accordance with the County's checklist, which was confirmed by the County. In the weeks following the submission of the Applications, the County delayed reviewing or responding to the Applications, creating time for the County to pass Ordinance 2023/18.

***CPO District Committee Meetings and Passage of Ordinance 2023/18***

56. Around the same time that Plaintiffs were meeting with the County, the CPO District Committee was reconvened during a meeting of the Natural Resources Committee on November 7, 2022, for the stated purpose of addressing additions to the CPO to reinforce its purpose and improve the protections of St. Helena Island and the surrounding islands.

57. However, at the first meeting of the CPO District Committee on December 13, 2022, the CPO District Committee was advised that they had been reconvened to address the proposed Pine Island Development and text amendment relating to the Use Limitations within the CPO District. Councilmember Glover indicated at the meeting: "If you have not heard, there is a proposal to do some development on Pine Island. And that's coming before the planning

commission pretty soon. And I need this committee here to interface with that group to have them tell you exactly what they're doing, that sort of stuff. And then make your recommendation known one way or the other with that."

58. At the same meeting, County Planning and Zoning Director, Robert Merchant, indicated the text amendments to the CPO Ordinance proposed by Mr. Greenway and Ms. Ward on January 5, 2023, which would provide for a modulation from the use limitations within the CPO District, was moving forward to deal with the Pine Island Development. "We received an application to, I believe it's going forward as a text amendment to the cultural protection overlay district specifically to address Pine Island." Mr. Merchant advised the CPO District Committee that the County wanted to have a section of the CDC specifically dealing with St. Helena Island and advised the CPO District Committee their task was to "build some meat" on the CPO Ordinance.

59. It was improper for the CPO District Committee to review and consider the plans for the Pine Island Development or the proposed January 5, 2023 text amendments and beyond the purview and statutory authority of the CPO District Committee. *See* Exhibit J, Eric Greenway email to Robert Merchant dated December 15, 2023.

60. From December 2022 through March 2023, the CPO District Committee met five times. None of these meetings were publicly notified and agendas for these meetings were not published. Additionally, at every CPO District Committee meeting, there were multiple handouts distributed by special interest groups discussing the Pine Island Property.

61. At the fourth CPO District Committee meeting held on February 21, 2023, Robert Merchant proposed text amendments CDC section 3.1.70: Land Use Definitions that would change the definition of Land Use Type "Recreation Facility: Golf Course" throughout the entirety of

Beaufort County. At the fifth CPO District Committee meeting held on March 21, 2023, when discussing golf courses, Robert Merchant stated, "I wanted to clarify something with this. In article three, where we have all of our use definitions…we change article three to this definition (new definition) and then in the CPO district, we will just say golf course as defined in article three." This change to CDC Section 3.1.70 and the CPO Ordinance that prohibited all golf courses within the CPO District Zone, as well as changing the definition of Golf Course throughout the entirety of the County. *See* Exhibit K, Robert Merchant text amendment notes.

62. The County's Planning Division is responsible for ensuring compliance with the CDC, preparing and administering local planning and development regulations, and carrying out community preservation planning. As the County's Zoning and Planning Director, Mr. Merchant derives his authority to implement and interpret the CDC from Section 7.5.60 of the CDC. *See* CDC § 7.5.60. Mr. Merchant was acting in his official capacity when proposing these text amendments to the Land Use Definitions and the CPO Ordinance and his actions are binding on the County.

63. Mr. Merchant proposed these text amendments without completing a text amendment application as required by CDC Section 7.3.30(B)(2). *See* Exhibit L, Blank Text Amendment Application. There was also no County staff review of an application to amend the text of Section 3.1.70 of the CDC or the CPO Ordinance nor did Mr. Merchant prepare a report and recommendation regarding a justifiable reason for the text amendments or an analysis of how the text amendments aligned with the Comprehensive Plan as required by CDC Section 7.3.30 of the CDC. *See* CDC § 7.3.30. Mr. Merchant's failure to follow CDC requirements for text amendments to the CDC created significant procedural irregularities, lacked transparency, and bypassed by procedural safeguards required by CDC Section 7.3.30.

64. On March 21, 2023, the CPO District Committee held a final meeting in which they proposed language to revise the purpose statement of the CPO Ordinance and to expand the prohibitions within the CPO District, rather than clarify them.

65. During a meeting of the CPO Committee on March 21, 2023, Beaufort County Beaufort County Planning Director Rob Merchant and Beaufort County Attorney Tom Keaveny addressed the portion of Section D: Use Limitations that related to and relied upon the U.S. Department of the Interior's National Park Service's Low Country Gullah Culture: Special Resource Study & Final Environmental Impact Statement dated July 2005 (the "NPS Study") stating, "we want to tweak it." *See* National Park Service. *Low County Gullah Culture Special Resource Study and Final Environmental Impact Statement.* Atlanta, GA: NPS, Southeast Regional Office, 2005NPS.

66. The Chairperson responded, "go ahead, tweak it" and Mr. Merchant and Mr. Keaveny then engaged a representative of the Southern Environmental Law Project ("SCELP") to assist in the tweaking of the language as follows: "Based on the purpose statement, and in particular the National Park Services through its low country Gullah environmental impact statement, just like the document, the County finds, and take out the quotation marks and leave all that about golf course, and then what it said. When you get to in some cases overtaking, instead of these sacred sites, **just put Gullah culture. And that way, what you do is, you make it a County finding. The County makes this finding but it is based on a federal environmental impact statement. So its got weight and credibility to it but the County makes the findings. We want to say the whole culture, the culture is wiped out by these things."**

67. The NPS Study actually states that "[b]aptismal sites are important spiritual markers of Gullah/Geechee community life" and "many ***baptismal sites*** … are becoming

increasingly inaccessible to Gullah/Geechee people" because "[g]olf courses, resorts, fences, beachfront development, boat landings, marinas, and the coastal population explosion are all encroaching upon and in some cases overtaking ***these sacred sites***." *See* Exhibit M, NPS Study Excerpt p. 80 (emphasis added).

68. There is nothing in the NPS Study that recommends a prohibition on golf courses as a means of protecting and preserving Gullah Geechee culture or states that golf courses are "wiping out the whole culture."

69. At the March 21, 2023 meeting, the CPO District Committee voted unanimously to recommend that the County Council deny the text amendments presented by Mr. Greenway and Ms. Ward on January 5, 2023, and adopt, instead, the amendments to Section 3.4.50 proposed by the CPO District Committee. However, as of the final meeting on March 21, 2023, the language of the text amendment to the Use Limitations had not been finalized.

70. Additionally, at that final meeting, the Chairperson of the CPO District Committee, when asked by the Vice-Chair what the Committee was tasked with accomplishing responded, "Councilman Glover stated… that one of our first priorities was to focus on Pine Island," *e.g.*, openly admitting that the purpose was to target Plaintiffs' project and property.

71. On March 30, 2023, a "Community Rally" was hosted by members of the CPO District Committee that specifically targeted the Pine Island Development. At that meeting, Councilmember Glover stated that "one of the things that the CPO Committee is doing; there is two distinct cultures on St. Helena, the English Culture and the African Culture. In the English Culture, everything is by law. In the African Culture, it's common. …What you have to do in the English Culture is you gotta create laws…in the African Culture, if you need to go get some fish,

you need to use your boat…that's the difference and so what the CPO Committee is doing is trying to make sure we can line up our Comprehensive Plan Language to the law."

72. At this same rally, Councilmember Glover referred to the Pine Island Development as "a little yeast out there that we need to destroy." The by-products of this call for destruction were the Pine Island Property gates being ripped down on April 1, 2023, multiple instances of trespassing on the property, and instances of violent behavior towards the Plaintiffs.

73. It is clear from Mr. Merchant's actions, the CPO District Committee's actions, and the actions of Beaufort County Council members that Beaufort County is advancing a protectionist and exclusionary policy of protecting a specific cultural and racial heritage on St. Helena Island at all costs and preventing encroachment onto St. Helena Island by populations not associated with the Gullah Geechee heritage and culture.

74. After the CPO District Committee's vote to approve the text amendments, instead of being considered by the Planning Commission, the CPO District Committee's text amendments were presented to the Community Services and Land Use Committee at its April 10, 2023 meeting. These text amendments included the following changes to the Use Limitations of Section 3.4.50 of the CPO Ordinance:

> **D. Use Limitations.** Based upon the Purpose statement above, and in particular the National Park Service's Low Country Gullah Culture: Special Resource Study & Final Environmental Impact Statement, Beaufort County finds that golf courses, resorts, fences, beachfront development, boat landings, marinas, and the coastal population explosion are all encroaching upon and in some cases overtaking Gullah/Geechee Culture, it is the public policy of Beaufort County to protect St. Helena Island's rural, historic, and cultural heritage by prohibiting the following uses which are deemed to be incompatible with the Cultural Protection Overlay District:
>
> **Restricted Access (Gated Communities)**. A residential neighborhood where accessibility is controlled by means of a gate, guard, barrier, or other similar improvements for the purposes of controlling the movement of traffic and people into and out of neighborhoods and usually include

> common areas, amenities such as swimming pools, clubhouses, restaurants which are open only to residents, property owners, members, and guests.
>
> **Resort**. This use includes lodging that serves as a destination point for visitors and designed with some combination of recreation uses or natural areas. Typical types of activities and facilities include marinas, beaches, pools, tennis, golf, equestrian, restaurants, shops, and the like. This restriction does not apply to ecotourism or its associated lodging.
>
> **Golf Course**. An area of land with improvements to the grounds on which the sport of golf is played. It typically consists of a series of holes, each consisting of a tee box, a fairway, the rough and other hazards, and/or a green with a cylindrical hole in the ground, known as a cup. Golf course accessory uses may include a clubhouse, restrooms, driving range, and shelters.

75. The Community Services and Land Use Committee approved the CPO District Committee's suggested text amendments to CDC Section 3.4.50, as well as text amendments to CDC Sections 3.1.70 and 3.4.10, and instead of proceeding to a public hearing in front of the Planning Commission as required by Table 7.4.50.A of the CDC, the text amendments were considered by County Council in a "TIME-SENSITIVE" manner at a hearing that immediately followed the Land Use Committee's hearing on the same day.

76. At this first reading on April 10, 2023, County Council approved the text amendments. Thereafter, County Council held a second reading on the text amendments on April 24, 2023, even though the Planning Commission still had not held a meeting to consider the text amendments as required by the CDC. *See* CDC § 7.4.50.A.

77. The Beaufort County Planning Commission is an appointed body responsible for advising County Council in the orderly planning of natural resources. The Planning Commission derives its authority from Section 7.5.20 of the CDC that proscribes it shall review and make recommendations on text amendments to the CDC, zoning map amendments, and appeals

regarding land development plans. At all times described herein, members of the Planning Commission were acting in their official capacities and their actions were binding on the County.

78. Beaufort County Council is an elected body responsible for setting County policies regarding the use and zoning of land in Beaufort County and for adopting the Comprehensive Plans. County Council has the ultimate authority to decide text amendments to the CDC and zoning map amendments under Section 7.5.10 of the CDC. At all times described herein, members of the County Council were acting in their official capacities and their actions were binding on the County.

79. By holding a first and second reading of the text amendments prior to the Planning Commission's consideration of the text amendments, County Council failed to follow the text amendment procedure set forth in Section 7.3.30 of the CDC. *See* CDC § 7.3.30(B). As an advisory body, the Planning Commission was required to consider the text amendment application, staff report, and any public comments before recommending to County Council that the text amendments be approved. See CDC § 7.4.80. This did not occur.

80. The proposed text amendments to CDC constituted zoning amendment regulations subject to the requirements of S.C. Code § 6-29-760, which mandates the planning commission shall hold a public hearing on the proposed amendments with at least fifteen (15) days notice. *See* S.C. Code § 6-29-760(A). S.C. Code § 6-29-760 further stipulates, "no change in or departure from the text or maps as recommended by the local planning commission may be made pursuant to the hearing unless the change or departure be first submitted to the planning commission for review and recommendation."

81. It was not until May 1, 2023 that the Planning Commission considered and then voted to approve and recommend the text amendments. The actions of Mr. Merchant, the Planning

Commission, and County Council in proposing and approving the text amendments to Section 3.1.70: Land Use Definitions and the CPO Ordinance were tainted with fundamental procedural irregularities. Mr. Merchant noted these procedural irregularities at the May 1, 2023 Planning Commission meeting when he stated, "it's a little unusual in that typically Planning Commission is asked to comment and recommend early on in the process." The meeting minutes from the May 1, 2023 Planning Commission indicate Mr. Merchant acknowledged that although the text amendments had already received second reading from the County Council, it is a requirement of the CDC and State law that the Planning Commission hear the text amendment proposal and provide a recommendation. *See* Exhibit N, May 1, 2023 Planning Commission Meeting Minutes.

82. At the May 1, 2023 Planning Commission meeting, Planning Director, Rob Merchant, also stated that, "In the course of four meetings we revamped the purpose statement and, in addition, …… the committee looked at the definitions to make sure that they were adequately defining the things that they called out." Factually, this is (i) the opposite of what occurred at the CPO Committee meetings where the Director himself proposed new definitions, (ii) not related to the CPO Committees mandate/charge from the Natural Resource Committee; and (iii) not what is reflected in Ordinance 2023/18 where Beaufort County found it "appropriate to amend other provisions of Article 3, Divisions 3.1 and 3.4 of the Community Development Code as recommended by the Planning and Zoning Department." *See* https://www.youtube.com/live/Efb6-GOK6JA?feature=shared&t=781 )

83. At the same meeting, Cecily McMillian, a member of the Planning Commission and the liaison to the CPO Committee asked Mr. Merchant directly, "In every other action item that I have seen…I have seen a recommendation from Staff one way or the other. There wasn't one here in this case, can you explain why?" Rather than explain why there was no formal,

procedurally and legally required staff report, Mr. Merchant's response was "we endorse the work that is coming forward."

84. Just seven (7) days after the Planning Commission recommended the text amendments, on May 8, 2023, the County Council adopted Ordinance 2023/18 to enact the text amendments to Article 3, Division 3.1, Section 3.1.70 (Land Use Definitions), Division 3.4, Section 3.4.10 (Overlay Zone Purpose) and 3.4.50 (Cultural Protection Overlay Zone Standard) of the CDC.

85. Councilmember Cunningham articulated the rushed proceedings in a statement to the Island Packet when he said, "[i]t was the fact that the CPO was supposed to be about the entire area, but we did nothing but talk about Pine Island and this didn't come up until Pine Island," followed by, "[s]o until people wanted to be open and honest and say it's about Pine Island, there was no reason even to have those conversations and push it through county council as fast as we did."

***<u>County's Denial of Plaintiffs' Conceptual Land Development Plan Applications</u>***

86. Plaintiffs worked diligently to pursue the steps necessary to the approval of the Pine Island Development as directed by the County. These actions on the part of Plaintiffs created vested rights under South Carolina law.

87. Although Plaintiffs submitted their Applications on March 7, 2023, the County delayed reviewing and responding to the Applications to allow the CPO District Committee's proposed text amendments to be rushed through to passage.

88. The Applications were complete in accordance with the County's checklist. *See* <u>Exhibit O,</u> Completed Checklist for Applications. Beaufort County Planning and Zoning was

obligated to determine within a reasonable amount of time whether the Applications were complete. *See* CDC § 7.4.30(F).

89. As a pretext to delay, on March 23, 2023, Beaufort County Planning and Zoning notified Plaintiffs that the resources identified in the Phase 1 Cultural Resources Survey provided by Plaintiffs must be shown on the demolition plans and site plans so that any impacts on identified resources can be evaluated and proposed mitigation measures assessed, despite the fact that this requirement was not on the County's Conceptual Plan Application checklist.

90. Additionally, Mr. Merchant refused to issue an Archaeological Determination Letter for the project, despite having communication with the Authority having jurisdiction, the State Historic Preservation Office ("SHPO"), requesting the Director to follow proper procedure in order to protect Cultural Resources on St. Helena Island. This intentional delay resulted in a meeting with the Plaintiffs' Legal Counsel, Beaufort County Attorney, and the Planning Director to discuss the issue and ended with the Planning Director admitting that it was a-typical and that the Applications were complete per the Conceptual Plan Checklist.

91. On April 14, 2023, prior to the enactment of the text amendments, Mr. Merchant issued letters denying Plaintiffs' three Applications on the basis that the Applications do not comply with the applicable standards of the CDC and amendments given first reading by County Council on April 10, 2023, which prohibit the use of golf courses under Section 3.4.50.D. *See* Exhibit P, April 14, 2023 Denial of Applications.

92. Plaintiffs' Applications complied with the version of the CDC in place at the time of such Applications, and there was no sufficient basis for the County to deny Plaintiffs' Applications.

93. Plaintiff had acquired vested rights the Property under the T2R zoning, which allows for a variety of uses, including golf courses of any size, and under the originally enacted CPO Ordinance (Ordinance No. 1999/12), which allowed par three golf courses having less than nine (9) holes.

94. The County's denial was an arbitrary and improper imposition of the "pending ordinance doctrine" to an area that was not "newly annexed," was a clear abuse of discretion by County's Planning and Zoning Director. The denial compounded the County's violation of vested rights arising under common law and other constitutionally protected property rights.

95. Mr. Merchant derives his authority to implement and interpret the CDC from Section 7.5.60 of the CDC and from the persistent and widespread practice at Beaufort County of permitting Mr. Merchant to decide the planning and zoning goals of Beaufort County and devise the means for achieving them. Mr. Merchant was acting in his official capacity when denying Plaintiffs' Applications and this action was binding on was carrying out the official policy of Beaufort County when denying Plaintiffs' Applications.

96. Furthermore, through his actions, Mr. Merchant was advancing the County's aforementioned exclusionary and protectionist policy of protecting a specific cultural and racial heritage on St. Helena Island at all costs and preventing encroachment onto St. Helena Island by populations not associated with the Gullah Geechee heritage and culture. When the Beaufort County Planning Commission voted to uphold Mr. Merchant's decision to denial Plaintiffs' Applications, the Planning Commission was advancing this same protectionist and exclusionary policy.

***Ordinance 2023/18***

97. As amended, Section 3.4.50 contains a new purpose statement and provides a "Use Limitations" section prohibiting golf courses, gated communities, and resorts ***anywhere*** within the CPO District. *See* Exhibit Q, Ordinance 2023/18.

98. The text amendments to Section 3.4.50 of the CDC include references to the NPS Study. The County's reliance on the NPS Study as a justification for enacting a prohibition on all gated communities, golf courses, and resorts is misguided because the purpose statement for Section 3.4.50 is not accurately based on the NPS Study when it states, the "County ***finds*** that golf courses, resorts, fences, beachfront development, boat landings, marinas, and the coastal population explosion are all encroaching upon and in some cases overtaking ***Gullah/Geechee Culture***." *See* CDC § 3.4.50(D) (emphasis added). What the NPS Study actually said was that ***baptismal sites*** are important spiritual markers of Gullah/Geechee community life and that "[g]olf courses, resorts, fences, beachfront development, boat landings, marinas, and the coastal population explosion are all encroaching upon and in some cases overtaking ***these sacred sites***." *See* Exhibit M (emphasis added).

99. In other words, the findings ultimately adopted by County Council are based on an intentional alteration and manipulation of the NPS Study, which itself does not suggest that municipalities such as the County should impose outright bans upon lawful uses of property as a measure to protect Gullah Geechee culture. On the contrary, the recommendations in the NPS Study involve significantly less drastic measures and techniques, likely due to the fact that the NPS understands that sweeping prohibitions of lawful land uses and broad deprivations of private property rights are improper.

100. The basis for the County's adoption of Ordinance 2023/18 was a protectionist one that was aimed at preserving a specific cultural and racial heritage, thereby implementing land use restrictions based on demographic preservation. The language of Ordinance 2023/18 specifically indicates it designed to prevent encroachment by populations not associated with the Gullah Geechee heritage, and the County advanced Ordinance 2023/18 as a means of controlling the demographics of St. Helena Island and as a means of protecting a specific racial or cultural demographic to the exclusion of other racial and cultural demographics to which Plaintiffs belong.

101. As noted above, the Property has been privately owned for centuries, and it is not an active baptismal site. The prohibitions and restrictions imposed by the CPO Ordinance are not an appropriate or narrowly tailored means to ensure access to active baptismal sites.

102. The CPO Ordinance is not only overly restrictive but also significantly attenuated from any proper means of actually achieving its stated purpose. By banning golf, and thereby encouraging increased residential development as a remaining land use, the CPO Ordinance actually works to undermine its stated purposes. No study was conducted by the County to support the prohibitions that have been imposed that, the NPS Study does not itself recommend. As a result, the CPO Ordinance is not a valid limitation upon the use of the Property.

103. The County has applied the prohibition on golf in a site-specific way that was targeted at Plaintiffs and the Pine Island Development. The County has imposed prohibitions on Plaintiffs that have not been imposed on similarly situated property owners.

104. On nearby Daufuskie Island, the County has implemented <u>two</u> zones to provide additional protections for cultural resources: D2R-GH (Gullah Heritage Standards) and HCO (Heritage Corridor Overlay Standards). The D2R-GH "preserves the Gullah heritage" and the HCO was "established to provide for the long-term protection of the culturally significant

resources . . . [and] acknowledges Daufuskie Island . . .[as] Beaufort County's most notable concentration of Gullah culture." The HCO is a mirror of the CPO, as it existed prior to the recent text amendment. The "Use Limitations" include a prohibition on golf courses, as defined to mean "regulation and par three golf courses having nine or more holes." As of this filing, it is still defined that way.

105. In the Coosaw Island Rural (CIR) Community Preservation District, Golf Course, defined as "Regulation and par 3 golf courses and associated amenities having nine or more holes" (A.11.40) is a Conditional Use (A.11.50) requiring that they adhere to higher levels of stormwater standards and the applicant submit a Community Impact Statement as a required report/study. As of this filing, this use is still conditional and defined this way.

106. A nearby private, gated community known as Dataw was excluded from the boundaries of the CPO District. Dataw contains two 18-hole golf courses, tennis courts, a swimming pool, and other recreational and natural uses. The private, gated community known as Bermuda Bluff contains a clubhouse, a community dock, tennis courts, a community swimming pool, as well as other recreational and natural uses. Other examples of low-density, low-volume golf courses in the County's geographic limits include Bray's Island, Spring Island, Chechessee Creek Club, Congaree Club, and Cherokee Club.

107. As these other instances show, Beaufort County is not applying the CDC and zoning regulations consistently across the geographic boundaries of the County and is arbitrarily discriminating against Plaintiffs.

108. Additionally, St. Helena Island is home to the Penn Center, which is the nation's first trade, agricultural, and normal school for freedmen. *See* Exhibit Q, 2023/18 Ordinance; *see also* www.PennCenter.com. The Penn Center property is a campus of the former Penn School, one

of the nation's first schools for formerly enslaved people that is now one of the most significant African American institutions in existence. While the Penn Center is a place of meaningful historical significance, the Penn Center also operates as a hotel and resort, charging fees ($600-$1400 per night) for "lodging that serves as a destination point for visitors…designed with some combination of recreation uses or natural areas." *See* Exhibit Q 2023/18 Ordinance. In addition, the Penn Center property is entirely fenced and restricts access to water, both violations of the amended CPO Ordinance.

109. The CPO Ordinance explicitly ties the land use restrictions to protecting the Gullah/Geechee community's cultural and historical identity and specifically references the importance of the Penn Center. The language of the ordinance underlines that certain developments — including hotels and resorts — are restricted to prevent the perceived threat to the Gullah Geechee culture. This policy creates a *de facto* racial classification by explicitly linking land use regulations to the preservation of a specific ethnic group, making it facially discriminatory (as well as plainly arbitrary.) .

110. The Penn Center, located within the CPO boundaries, serves as a significant cultural site and hosts events, provides accommodations, and facilitates activities that support tourism and commerce. Despite these similar commercial functions, the CPO restricts new developments that would engage in comparable activities (like lodging with recreational facilities) if they are perceived as potentially altering the rural character of the island or impacting the Gullah/Geechee culture. This creates an inconsistency that favors established local entities while discriminating against new, potentially out-of-state, commercial developments.

111. In order to exhaust any available administrative remedies prior to bringing this action, Plaintiffs both appealed the Beaufort County Planning and Zoning Director's denial of the

Applications and requested a zoning map amendment to remove the Property from the CPO District on the basis of the facts set forth above. As previously indicated, the County's Planning Commission denied the appeal. Also, County Council has denied the zoning map amendment request, which was done on an improper, arbitrary and capricious manner and was premised upon incorrect findings.

112. After having undertaken every possible effort to resolve the matter, Plaintiffs now file this action for declaratory relief and monetary damages in order to meet any and all timing requirements for asserting their claims.

**FOR A FIRST CAUSE OF ACTION**
***(Declaratory Judgment)***

113. Plaintiffs restate and re-allege each and every allegation above as if fully set forth herein.

114. The South Carolina Declaratory Judgment Act (the "Declaratory Judgment Act") provides that this Court has the power to declare rights, status and other legal relations whether or not further relief is or could be claimed. *See* S.C. Code § 15-53-20.

115. The Declaratory Judgment Act provides that any person whose rights, status or other legal relations are affected by a statute or municipal ordinance may have determined any question of construction or validity arising under the statute or ordinance and obtain a declaration of rights, status or other legal relations thereunder. *See* S.C. Code § 15-53-30.

116. **This cause of action for declaratory judgment seeks a determination regarding the applicability of the CPO, as amended, as to the Property owned by Plaintiffs only, and not as to any other properties on St. Helena Island owned by others. Additionally, this cause of action also addresses County Council's denial of the zoning map amendment as to the Property owned by Plaintiffs only.**

117. On this basis, all necessary parties have been joined to this action pursuant to the requirements of the Declaratory Judgment Act. *See* S.C. Code § 15-53-80.

118. An actual, justiciable controversy exists between the parties relating to their rights and obligations under the County's CPO Ordinance, the CDC, the Comprehensive Plan, the Enabling Act, and common law property rights.

119. As set forth above, Plaintiffs worked diligently to pursue the steps necessary to the approval of the Pine Island Development as directed by the County. These actions on the part of Plaintiffs created vested rights under South Carolina law.

120. The Vested Rights Act is a set of statutory provisions under which a developer may seek to protect the right to undertake and complete the development of property. *See* S.C. Code §§ 6–29–1510.

121. The Vested Rights Acts requires a local government to establish a point in time in the zoning or land development plan approval process, before issuing the building permit, at which the owner's right to use or develop vests. S.C. Code § 6-29-1540 (5).

122. "Site specific development plan" means a development plan submitted to a local governing body by a landowner describing with reasonable certainty the types and density or intensity of uses for a specific property or properties. The plan may be in the form of, but is not limited to, the following plans or approvals: planned unit development; subdivision plat; preliminary or general development plan; variance; conditional use or special use permit plan; conditional or special use district zoning plan; or other land use approval designations as are used by a county or municipality." S.C. Code Ann. § 6-29-1520(9).

123. Plaintiffs' actions in furtherance of the Pine Island Development created a vested right to develop the Property in accordance with the T2R zoning classification and the then-

existing Use Limitations provided in Section 3.4.50 as it existed prior to May 8, 2023. *See Friarsgate, Inc. v. Town of Irmo*, 290 S.C. 266, 269–70, 349 S.E.2d 891, 893 (Ct. App. 1986) ("[A] contemplated use of property by a landowner on the date a zoning ordinance becomes effective is not protected.").

124. Plaintiffs' actions in diligently pursuing the development also establishes Plaintiffs' constitutionally protected property interest in the context of its substantive due process claim and investment backed expectations.

125. Additionally, Plaintiffs enjoyed a vested interest entitling them to the County's approval of Plaintiffs' Applications. Plaintiffs' Applications were complete in accordance with the County's conceptual plan checklist. *See* Exhibit O. The Beaufort County Planning and Zoning Director created pretextual reasons for determining the Applications were incomplete, later admitting his pretextual requirements for completeness of Plaintiffs' Application were a-typical and that the Applications were complete per the County's conceptual plan checklist.

126. Plaintiffs enjoyed an entitlement to the approval of their Applications, which showed a use expressly permitted under the version of the CDC applicable at the time Plaintiffs' Applications were submitted to the County.

127. Given the fact that Plaintiffs' Applications were complete, Beaufort County Planning and Zoning Director lacked the discretion to deny these Applications. The Director's denial of the Applications was arbitrary, unreasonable, and a clear abuse of discretion and was based on an exclusionary and protectionist policy of Beaufort County.

128. Plaintiffs have a vested right to develop the Property as a golf course in accordance with the T2R zoning classification and Section 3.4.50 of the CPO Ordinance, as it existed prior to May 8, 2023. At the time Plaintiffs submitted the Applications, the County had not held a first

reading or even considered the text amendments adopted on May 8, 2023 through Ordinance 2023/18, and therefore, Plaintiffs' vested rights were not altered by any possible application of the pending ordinance doctrine. *See Sherman v. Reavis*, 257 S.E.2d 735, 737 (1979).

129. Additionally, Plaintiffs took substantial action and incurred substantial expenditures in preparation for obtaining approval of their Applications, thereby exhibiting a good faith reliance on language of the original CPO Ordinance that allowed golf courses with less than nine holes. *See Scott v. Greenville County*, 716 F.2d 1409 (4th Cir. 1983) (finding where building permit applicant had substantial expenditures in preparation for obtaining the permit, the applicant exhibited good faith reliance on the zoning ordinance in effect as of the date on which he formally applied for the building permit.)

130. As currently written, the CPO Ordinance: (i) exceeds the limits of the County's power and authority relating to regulation land use; (ii) is an improper application of an overlay zone that violates uniformity with underlying base zoning; (iii) is based on invalid findings; (iv) is not narrowly tailored; (v) is overbroad, arbitrary, and irrational; (vi) amounts to a regulatory taking; (vii) is incompatible with state law and the below-referenced constitutional protections; (viii) is not reasonably related to the implementation of the general purpose and intent of the County's Comprehensive Plan; (ix) constitutes "exclusionary zoning," "spot zoning," and/or "reverse spot zoning;" and (x) is an improper prohibition on lawful uses that unduly infringes upon the right to travel and the commerce clause, among its other legal failures. Additionally, County Council wrongfully improperly denied the zoning map amendment request, such that Plaintiffs are continuing to be damaged by the application of the CPO Ordinance to their property.

131. For the reasons stated in this Complaint, Plaintiffs are entitled to a declaration that the CPO Ordinance is invalid as to the Property and that the intended development plan is

permissible under applicable law. In the alternative, Plaintiffs are entitled to an approval of their zoning map amendment request, which was wrongfully denied.

**FOR A SECOND CAUSE OF ACTION**
***(Violation of 42 U.S.C. § 1983)***

132. Plaintiffs restate and re-allege each and every allegation above as if fully set forth herein.

133. The County, through its employees and agents, owes Plaintiffs a duty under the due process clauses of the Fourteenth Amendment to the U.S. Constitution and Article I, § 7 of the South Carolina Constitution to protect the property rights of Plaintiffs.

134. Section 1983 of the Civil Rights Act of 1971, 42 U.S.C. § 1983 provides that every person who, under color of any statute, ordinance regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

135. Article I, Section I of the South Carolina Constitution provides that no person "shall be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws."

136. To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. *See* 42 U.S.C. § 1983.

137. Where a municipality either: (a) adopts or promulgates a policy; (b) engages in a custom or practice that is not written or formally adopted; (c) fails to supervise its employees and otherwise ensure that its employees follow applicable law; or (d) allows a policymaker to make a

decision or undertake an act, and the result of any of the foregoing is a deprivation of protected rights, privileges and immunities occurring under color of law, municipal liability exists under Section 1983.

138. It is the public policy of Beaufort County to preserve a specific cultural and racial heritage on St. Helena Island at all costs and to prevent encroachment onto St. Helena Island by populations not associated with the Gullah Geechee heritage and culture.

139. The County engaged in conduct that deprived Plaintiffs of its constitutional property rights when: (i) County Planning and Zoning Director, Robert Merchant, denied Plaintiffs' Applications; (ii) the Beaufort County Planning Commission upheld the Director's decision; (iii) the County adopted Ordinance 2023/18 forbidding golf courses as a land use in the CPO District; and (iv) when the County denied Plaintiffs' zoning map amendment. All of these aforementioned actions were motivated by impartiality towards the Plaintiffs and represent the execution of this protectionist, exclusionary, and discriminatory public policy.

140. Mr. Merchant has the authority to prepare and administer local planning and development regulations and to implement the general planning and development goals and programs of Beaufort County. His authority derives from Section 7.5.60 of the CDC and from the persistent and widespread practice at Beaufort County of permitting Mr. Merchant to decide the planning and zoning goals of Beaufort County and devise the means for achieving them.

141. Mr. Merchant was engaging in decisions to advance the County's exclusionary and protectionist policy when he proposed and advanced the text amendments to the CPO Ordinance and when he denied Plaintiffs' Conceptual Land Development Applications.

142. The Beaufort County Planning Commission is an appointed body responsible for advising County Council in the orderly planning of natural resources. *See* CDC § 7.5.20. Beaufort

County Council is an elected body responsible for setting County policies regarding the use and zoning of land in Beaufort County and for adopting the Comprehensive Plans. *See* CDC § 7.5.10.

143. The Planning Commission was engaging in decisions to advance the County's exclusionist and protectionist policy when they upheld Mr. Merchant's determination regarding the Plaintiffs' Applications. The County Council was engaging in decisions to advance the County's exclusionist and protectionist policy when they approved CPO District Committee's recommended text amendments to the CPO Ordinance.

144. The implementation of this exclusionary and protectionist policy through these aforementioned actions by the County were a direct cause of or moving force behind the denial of Plaintiffs' property rights.

145. Plaintiffs had a vested interest entitling them to the County's approval of Plaintiffs' Applications because their Applications were complete in accordance with the County's conceptual plan checklist and the Beaufort County Planning and Zoning Director has admitted the same. Plaintiffs' Applications were complete and were in full compliance with the zoning laws and pertinent provisions of the CDC in effect at the time they were submitted. The Beaufort County Planning Director's denial of the Applications was arbitrary, unreasonable, and a clear abuse of discretion and was based on an exclusionary and protectionist policy of Beaufort County.

146. Plaintiffs have a vested right to develop the Property as a golf course in accordance with the T2R zoning classification and Section 3.4.50 of the CPO Ordinance, as it existed prior to May 8, 2023.

147. Under South Carolina law, good-faith reliance upon an ordinance existing at the time of an application creates a vested right to a permit such that a subsequently enacted ordinance

cannot deprive the applicant of a use that was permitted by the then-existing ordinance. *See Pure Oil Division v. City of Columbia,* 254 S.C. 28, 173 S.E.2d 140 (1970).

148. At the time Plaintiffs submitted the Applications, the County had not held a first reading or even considered the text amendments adopted on May 8, 2023 through Ordinance 2023/18, and therefore, Plaintiffs' vested rights were not altered by any possible application of the pending ordinance doctrine. *See Sherman v. Reavis*, 257 S.E.2d 735, 737 (1979).

149. By retroactively applying the text amendments to an area that was not "newly annexed," the County has violated and is liable under Section 1983 for the deprivation of Plaintiffs' property rights, which occurred pursuant to the County's policy or custom.

150. Plaintiffs were deprived of their procedural due process rights by: (i) the lack of notice for CPO District Meetings and (ii) the failure of the County Planning and Zoning Director to follow CDC Section 7.3.30 procedural requirements regarding text amendments, which included: (a) failure to complete a text amendment application; (b) failure of the Planning and Zoning Director to prepare a report and recommendation regarding the proposed text amendments that provided any justification of the reason for the text amendments or analysis of how the text amendments aligned with the Comprehensive Plan; and (c) failure by the Planning Commission to review the proposed text amendments and make recommendations regarding the same to the County Council before the County Council considered these text amendments. All of these aforementioned acts by the County were ultra vires.

151. S.C. Code § 6-29-760 further stipulates, "no change in or departure from the text or maps as recommended by the local planning commission may be made pursuant to the hearing unless the change or departure be first submitted to the planning commission for review and recommendation." Plaintiffs' procedural due process rights were violated by the County through

the County's failure to follow CDC requirements and S.C. Code § 6-29-760 for approving text amendments to the CDC. These procedural due process violations created fundamental procedural irregularities, resulted in a process that lacked transparency, disregarded procedural safeguards required by CDC Section 7.3.30 and State law.

152. Plaintiffs were denied substantive due process because the County's action of denying Plaintiffs' Applications and adopting Ordinance 2023/18 forbidding golf courses in the CPO District had no basis in reason and were mere arbitrary and irrational exercises of power that had no substantial relation to the public health, morals, safety, or welfare of the citizens of Beaufort County. These actions were arbitrary, capricious, and without a rational relationship to a legitimate public interest because there are no Gullah Geechee baptismal sites on the Property that are in need of protection, there is no documentation that golf courses pose a harm to Gullah Geechee culture and history, and there is no evidence that prohibiting golf courses outright is an appropriate means of preserving Gullah Geechee culture.

153. The prohibitions and restrictions imposed by the CPO Ordinance are not an appropriate or narrowly tailored means to ensure access to active baptismal sites. Furthermore, these actions were motivated by the County's protectionist intent to limit development that could change St. Helena Island's demographic and cultural composition.

154. The exclusionary and protectionist preservation of a specific cultural and racial heritage on St. Helena Island at all costs and prevention of encroachment onto St. Helena Island by populations not associated with the Gullah Geechee heritage and culture is not a legitimate interest or purpose of government.

155. Furthermore, this substantive due process inquiry involving a balancing of landowners' rights against the public interest sought to be protected by an exercise of the police power, must accord substantial deference to the preservation of rights of property owners.

156. As a direct and proximate cause of the acts of the County, Plaintiffs have suffered and continue to suffer an injury in fact as well as a violation of substantive due process, procedural due process, violation of equal protection, regulatory taking, and inverse condemnation, all of which entitle Plaintiffs to declaratory and monetary relief.

157. For the reasons stated in this Complaint, Plaintiffs are entitled to a declaration that the CPO Ordinance is invalid as to the Property and that the intended development plan is permissible under applicable law. In the alternative, Plaintiffs are entitled to an approval of their zoning map amendment request, which was wrongfully denied.

158. Also, pursuant to 42 U.S.C. § 1988, Plaintiffs are also entitled to an award of all attorney's fees and costs incurred in this action.

**FOR A THIRD CAUSE OF ACTION**
**(*Violation of Equal Protection*)**

159. Plaintiffs restate and re-allege each and every allegation above as if fully set forth herein.

160. The Fourteenth Amendment of the United States Constitution and Article 1, Section 3 of the South Carolina Constitution guarantees the right of equal protection, which includes the right to be free from arbitrary and capricious limitations on the use of property that are not applicable to all properties.

161. Plaintiffs have been treated differently from other similarly situated landowners in Beaufort County based on impermissible considerations, namely racial and cultural exclusivity. The CPO Ordinance employs a race-based classification by aiming to preserve the Gullah Geechee

culture, which is intrinsically linked to a specific racial group. As summarized by Beaufort County Attorney Brian Hulbert at the June 5, 2023, appeal defending the CPO Ordinance, "Golf Courses are repugnant to Gullah cultural community."

*See* https://www.youtube.com/live/2eicCOOYxEM?feature=shared&t=14192 .

162. The County has banned golf courses, resorts, and gated communities from the CPO District with the intent of excluding a certain demographic to which Plaintiffs belong. Beaufort County Planning and Zoning Director's decision to deny Plaintiffs' Applications, the Planning Commission's upholding this determination, the County's adoption of Ordinance 2023/18 forbidding golf courses, and the County's denial of Plaintiffs' zoning map amendments were based on these impermissible considerations.

163. The County's purposeful discrimination against Plaintiffs has led to the County's unequal treatment of the Plaintiffs. Plaintiffs have cited several other instances where the County has permitted golf courses such as in the Heritage Corridor Overlay on Daufuskie Island and the Coosaw Island Rural Community Preservation. Additionally, the County has allowed the Penn Center to operate what is essentially a resort despite Ordinance 2023/18's prohibition on such activity. The County also allows of other types of activities in the CPO District (*e.g.*, Amusement and Theme Parks, Go-Cart Tracks, Golf Driving Ranges, Mini Golf Courses, Water Parks, Community and Regional Waste and Recycling Centers, etc.) The County bans golf courses entirely within the CPO District while allowing these other uses that would have similar or greater impacts upon natural or cultural resources, which is further evidence of the County's disparate treatment and discrimination.

164. The CPO Ordinance imposes restrictions that are not uniformly applied and are based on racial considerations. The provisions and prohibitions within the CPO Ordinance also

lack a rational relationship and nexus to their stated purposes and is irrational with respect to what is allowed and what is prohibited. Under applicable law, any ordinance which affects a total prohibition of an otherwise legitimate business use (such as golf, hotels, or resorts) is "particularly suspect" for equal protection purposes.

165. The way in which Ordinance 2023/18 was passed is evidence that improper purposes (*i.e.*, discriminatory intent) played a role in its passage. Plaintiffs' Pine Island Development was targeted by the CPO District Committee as an issue that needed to be snuffed out, and Ordinance 2023/18 was born out of this motivation. The procedural irregularities that occurred when the County pushed the text amendments through the approval process are further evidence of the underlying improper purpose of Ordinance 2023/18. The original CPO Ordinance had existed for over twenty years until Plaintiffs proposed a golf course for the Property, and within a matter of months, all golf courses became prohibited on St. Helena Island.

166. The CPO Ordinance explicitly ties the land use restrictions to protecting the Gullah Geechee community's cultural and historical identity and specifically references the importance of the Penn Center. The language of the CPO ordinance underlines that certain developments—including hotels and resorts—are restricted to prevent the perceived threat to the Gullah Geechee culture. This policy creates a de facto racial classification by explicitly linking land use regulations to the preservation of a specific ethnic group, making it facially discriminatory.

167. The Penn Center, located within the CPO boundaries, serves as a significant cultural site and hosts events, provides accommodations, and facilitates activities that support tourism and commerce. Despite these similar commercial functions, the CPO restricts new developments that would engage in comparable activities, like lodging with recreational facilities, if they are perceived as potentially altering the rural character of the island or impacting the Gullah

Geechee culture. This creates an inconsistency that favors an established cultural and racial demographic while discriminating against commercial developments with a differing cultural and racial demographic such as Plaintiffs.

168. Under the circumstances, the provisions of the CPO Ordinance must pass "strict scrutiny" to be a valid restriction on the subject Property. *See Hunt v. Cromartie*, 526 U.S. 541, 546 (1999) (A facially neutral law warrants strict scrutiny only if it can be proved that the law was "motivated by a racial purpose or object," or if it is "unexplainable on grounds other than race.")

169. The CPO Ordinance, as amended, does not pass this test or any other test as might be applicable. As noted above, the CPO Ordinance: (i) exceeds the limits of the County's power and authority relating to regulation land use; (ii) is an improper application of an "overlay zone;" (iii) is based on invalid findings; (iv) is not narrowly tailored to achieve a compelling government interest; (v) is overbroad, arbitrary, and irrational; (vi) amounts to a regulatory taking; (vii) is incompatible with state law and the aforementioned constitutional protections; (viii) is not reasonably related to the implementation of the general purpose and intent of the County's Comprehensive Plan; (ix) is an improper prohibition on lawful uses that unduly infringes upon the right to travel and the commerce clause, among its other legal failures; and (x) constitutes "exclusionary zoning," "spot zoning," and/or "reverse spot zoning" that does not adhere to underlying base zoning and the Comprehensive Plan, does not promote the common welfare, and results in clear injustice to Plaintiffs.

170. Based on the nature of the County's actions, Plaintiffs are entitled to proceed both generally and as a "class of one" on their claim for equal protection.

171. Based on the foregoing, Plaintiffs are entitled to judgment against the County that the CPO Ordinance is not applicable to the Property and for monetary damages arising from the

violation of Plaintiffs' constitutional rights to due process and equal protection. In the alternative, Plaintiffs are entitled to declaratory relief that the denial of the zoning map amendment request constituted a violation of equal protection and was therefore invalid.

**FOR A FOURTH CAUSE OF ACTION**
***(Violation of Commerce Clause)***

172. Plaintiffs restate and re-allege each and every allegation above as if fully set forth herein.

173. The Dormant Commerce Clause prohibits "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 273–74 (1988). A discriminatory law is virtually per se invalid and will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives. *Department of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008).

174. A state law only incidentally affecting interstate commerce will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefit. *Pike v. Bruce Church, Inc*., 397 U.S. 137, 142 (1970).

175. The CPO Ordinance has the practical effect of discriminating against interstate commerce because it impermissibly burdens interstate commerce by prohibiting hotels, resorts, and golf courses. *See Envtl. Tech. Council v. Sierra Club*, 98 F.3d 774, 785 (4th Cir.1996). By removing golf courses and resorts as permissible uses in the CPO District, the CPO Ordinance creates a barrier to interstate commerce and places St. Helena Island in a position of economic isolation.

176. The CPO Ordinance was passed by the County to preserve a specific cultural and racial heritage on St. Helena Island at all costs and to prevent encroachment onto St. Helena Island

by populations not associated with the Gullah Geechee heritage and culture. Ordinance 2023/18 was born out of an exclusionary and discriminatory policy and does not advance a legitimate local purpose.

177. By prohibiting new developments under the guise of protecting cultural identity while allowing existing local operations like the Penn Center to provide similar services, the CPO Ordinance creates an economic protectionism that undermines fair competition and impedes interstate commerce by favoring local interests.

178. The CPO Ordinance's restrictions place an undue burden on interstate commerce by effectively barring out-of-state developers and businesses from establishing comparable facilities that would bring economic activity and contribute to the local economy. This unequal treatment fosters a regulatory environment that benefits in-state entities at the expense of out-of-state competitors such as Plaintiffs.

179. The CPO Ordinance's stated purposes include the protection of the cultural, natural, and historic resources on St. Helena Island. However, the County's stated concerns relating to the protection of the Gullah Geechee culture and heritage could be adequately served by reasonable nondiscriminatory alternatives that have a lesser impact on interstate commerce. A total prohibition against golf courses, gated communities, and resorts within the entire CPO District is clearly excessive when weighed against the local putative benefits.

180. The County does not clarify what particular negative effects that a golf course would have that are not shared by other uses already existing or that are allowed in the CPO District.

181. The County has failed to provide a legitimate purpose that is actually achieved by the broad prohibitions and restrictions to an extent that would be sufficient to justify the deprivations of property rights that the current CPO Ordinance imposes upon Plaintiffs.

182. Accordingly, the Court should determine that the CPO Ordinance violates the Commerce Clause as applied to the Property and therefore, does not prohibit the intended development of the Property.

**FOR A FIFTH CAUSE OF ACTION**
***(Estoppel)***

183. Plaintiffs restate and re-allege each and every allegation above as if fully set forth herein.

184. A claim for estoppel against the government requires the claimant to show: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) the action based thereon was of such a character as to change prejudicially the position of the party claiming the estoppel.

185. At the time Plaintiffs purchased the Property, the then-existing language of the CPO Ordinance allowed Plaintiffs' intended plan of constructing golf courses on the Property and Plaintiffs had no knowledge to the contrary.

186. Several County representatives including (i) County Administrator Eric Greenway; (ii) County Attorney Tom Keaveny; (iii) Deputy County Attorney Brittany Ward; (iv) County Planning and Zoning Director Rob Merchant; and (v) Deputy County Planning Director Mark acknowledged that prior to Ordinance 2023/18, a golf course was a permissible use of the Property. In making this representation, these individuals were acting within the scope of their authority and were legally authorized to bind the County.

187. Section 9.4.10 of the CDC specifically states that the County Administrator shall be responsible for enforcing the provisions of the CDC. *See* CDC § 9.4.10. The County's Planning Division, which includes Mr. Davis and Mr. Merchant, is responsible for ensuring compliance with the CDC, preparing and administering local planning and development regulations, and carrying out community preservation planning. As the County's Zoning and Planning Director, Mr. Merchant derives his authority to implement and interpret the CDC from Section 7.5.60 of the CDC. *See* CDC § 7.5.60.

188. These County officials' representations to Plaintiff were not mistaken statements of law. During the Planning Commission meeting on January 5, 2023 meeting, Mr. Greenway and Ms. Ward confirmed that the language of the then-existing CPO Ordinance, which had been in place since 1999, allows the use of golf courses of less than nine (9) holes. During this same meeting, these same County officials further confirmed that a developer could subdivide parcels to effectively achieve an 18-hole golf course so long as each parcel was developed independently and in accordance with the CDC.

189. Eric Greenway, Mark Davis, Tom Keaveny, and Brittany Ward also acknowledged that a property owner could subdivide their property and circumvent the prohibition against golf courses of nine (9) or more holes based on the current zoning and the language of the CPO. In making this representation, these individuals were acting in their official capacities and within the scope of their authority; their representations and actions were legally binding on the County.

190. Plaintiffs relied upon the County's statements confirming that the CPO allows multiple golf courses of less than nine (9) holes, as well as statements relating to a property owner's ability to subdivide a property to circumvent the CPO's prohibition against golf courses having nine (9) or more holes.

191. Plaintiffs made expenditures and changed development plans in reliance upon the County's statements and applicable zoning standards and regulations. Plaintiffs hired and paid a team of engineers, surveyors, landscape architects, land planners, archaeologists, arborists and attorneys to pursue a development plan of three (3) separate golf courses of less than nine (9) holes each. Plaintiffs expended time, money, and effort to meet with the community leaders and citizens of St. Helena Island to determine which aspects of development are most important to the community.

192. In addition, the standard process that all land developments in Beaufort County must go through requires a Pre-Application meeting "intended to provide an opportunity for County staff to become familiar with, and offer the applicant preliminary comments about, the scope, features, and impacts of the proposed development, as it relates to Code standards" See CDC § 7.4.20. The Plaintiff's adhered to this process at their March 8, 2023 SRT meeting. All of the Planning and Zoning Department was present as the Planning and Zoning Administrator publicly confirmed with the Beaufort County Legal Department that the applications for three (3) separate golf courses of less than (9) holes each were a permitted use.

193. Plaintiffs are entitled to judgment against the County for the significant losses and damages that Plaintiffs have suffered as a result of their reliance on the County's representations and zoning standards and regulations, and actions in conformity therewith, for damages in the amount to be determined.

**FOR A SIXTH CAUSE OF ACTION**
***(Regulatory Taking)***

194. Plaintiffs restate and re-allege each and every allegation above as if fully set forth herein.

195. The CPO Ordinance, both as initially adopted and as amended, constitutes a taking of Plaintiffs' private property for a public benefit without just compensation.

196. The CPO Ordinance prohibits "restricted access" to residential neighborhoods by means of a gate, guard, or barrier, including amenities such as swimming pools. *See* CDC, § 3.4.50(D). It also prohibits resorts, hotels, and any lodging that serves as a destination point for visitors. *See* CDC, § 3.4.50(D). Furthermore, the CPO Ordinance prohibits design features that restrict access to water and other culturally significant locations. *See* CDC, § 3.4.50(C).

197. By purporting to eliminate these uses and rights, and by unduly delaying Plaintiffs' development plan, the County has committed a regulatory taking of the Property.

198. As previously stated, the character of the County's actions were manifestations of an exclusionary and discriminatory policy that were not a legitimate exercise of the County's police power. The County's aforementioned actions have no basis in reason and were mere arbitrary and irrational exercises of power that had no substantial relation to the public health, morals, safety, or welfare of the citizens of Beaufort County.

199. Plaintiffs had reasonable investment backed expectations when they purchased the property in late February 2023 as they had assembled a team of engineers, surveyors, landscape architects, land planners, archaeologists, arborists and attorneys to pursue the Pine Island Development and undertook significant efforts to ready the Property for development in accordance with the CDC and recommendations of County officials prior to the Property's purchase.

200. Plaintiffs' actions show Plaintiffs had reasonable reliance on the language of the CPO Ordinance as it existed prior to May 8, 2023 as well as a reasonable reliance on the County's representations about the permissible use of the Property. At the time of Plaintiffs' purchase of

the Property, golf courses with less than nine (9) holes per parcel were permitted, and Plaintiffs had a reasonable expectation this use would continue to be allowed by the County.

201. Furthermore, the Property has been continuously used as a private recreation destination, resort and investment property since the 1800s, and no reasonable owner in Plaintiffs' shoes should have expected that use of the Property for recreational purposes would no longer be permissible.

202. Plaintiffs have experienced a diminution in the value of the Property because of Ordinance 2023/18, which imposes unreasonable restrictions on the use of the Property without any rational relation to a legitimate government interest or purpose.

203. As a result of the County's actions, Plaintiffs have suffered an injury in fact and resulting damages, and they are entitled to judgment against the County for regulatory taking in an amount to be proven at trial.

**WHEREFORE**, on the basis of these claims against Defendant Beaufort County, South Carolina, Plaintiffs Pine Island Property Holdings, LLC and Pine Island GC, LLC respectfully request that the Court:

i. Issue a declaratory judgment stating that the CPO Ordinance is invalid as to the Property owned by Plaintiffs and that the intended development plan is allowable;

ii. In the alternative, issue a declaratory judgment that Plaintiffs' zoning map amendment request to be removed from the CPO Ordinance was improperly denied and must be approved;

iii. Enter a judgment for monetary damages and attorney's fees against the County;

iv. Award Plaintiffs all other and further relief as the Court deems just and proper.

Respectfully submitted,

By: *s/ Ellis R. Lesemann*

Ellis R. Lesemann (Fed. ID No. 7168)
erl@lalawsc.com
Michelle A. Stewart (Fed. ID No. 12460)
mas@lalawsc.com
Lesemann & Associates LLC
418 King Street, Suite 301
Charleston, SC 29403
(843) 724-5155

November 18, 2023
Charleston, South Carolina

***Attorneys for Plaintiffs***